UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 3:18-cr-00010-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FEI ZHOU TANG, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on the United States' Motion to Amend Judgment [R. 91.] This matter being ripe for review, having held a restitution hearing, and for the reasons that follow, the Court will **GRANT** the United States' Motion.

**I**

In June 2018, Fei Zhou Tang was charged with multiple financial crimes stemming from his ownership of a restaurant in Shelbyville, Kentucky.  [R. 1.]  Included in the charges were allegations that he failed to pay minimum wage to his employees.  *Id.*  On July 9, 2020, Mr. Tang was sentenced to a three-year term of probation and ordered to pay restitution to five of his victims.  [R. 90.]  Though Mr. Tang's plea agreement required him to pay $3,625 to J.M., a sixth victim, J.M. filed a separate restitution request for $16,380.  [*Compare* R. 71 *with* R.89.]  J.M.'s separate restitution request created a dispute that the Parties failed to settle prior to Mr. Tang's sentencing.  [*See* R. 90.]  As a result, the Government was ordered to clarify the amount of restitution owed to J.M. within sixty days post-sentencing.  *Id.*  It was not until May 11, 2021, however, that the Government revisited this matter.  [R. 91.]  And instead of clarifying the

matter, the Government requested a restitution hearing be held and that the Court act as the factfinder to determine the appropriate amount of restitution owed to J.M. *Id.* Accordingly, a restitution hearing was held on August 3, 2021, at which time Department of Labor Investigator Katie Ritz and victim J.M. testified. [R. 96.] This matter is now ripe for review.

## II

Under 18 U.S.C. § 3664(d)(5), a sentencing court is "statutorily obligated to resolve the restitution issue within 90 days of the sentencing hearing." *United States v. Vandeberg*, 201 F.3d 805, 813 (6th Cir. 2000); *Dolan v. United States*, 560 U.S. 605, 608 (2010). However, a sentencing court that misses this 90-day deadline retains the power to order restitution where it has "made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Dolan*, 560 U.S. at 608. Indeed, precedent in this Circuit has upheld "the imposition of a restitution order almost two years after the original sentence was imposed." *United States v. Bogart*, 576 F.3d 565 (6th Cir. 2009). In this matter neither party argues that the period has passed for the Court to amend its restitution judgment, and, regardless, the Court explicitly indicated at Mr. Tang's sentencing that this restitution issue was to be addressed at a later date. [R. 90; R. 96.] Accordingly, the Court will proceed to determine whether amendment of its Judgment is appropriate.

Under the Fair Labor Standards Act, an employer must pay a "tipped employee" a direct wage of $2.13 per hour and then apply a "tip credit" to meet the $7.25 per hour minimum wage requirement. That is, if the combination of an employee's $2.13 base wage and tips fails to result in the employee making at least $7.25 per hour, the employer is required to pay the difference in wages. 29 U.S.C. § 203(m). Furthermore, "tipped employees who receive $2.13 per hour in direct wages are also subject to overtime at one and one-half times the applicable

minimum wage [...]." *Solis v. Aguilar*, 2009 U.S. Dist. LEXIS 87021 at *14 (M.D. Tn. September 7, 2009).  Finally, "[a]ny employer who violates [wage and hour provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, [...] in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

## A

Before the Court can determine the amount of restitution owed to J.M., it must first determine whether she was paid a base wage of $2.13 while employed by Mr. Tang.  When testifying before the grand jury, J.M. initially stated that she had been paid a $2.13 base wage in 2016, but not in 2017.  [R. 98 at 16.]  Conversely, J.M. later indicated that she had never received a base wage and, instead, had only been permitted to keep her tips.  *See id.*  When asked to explain this contradiction, J.M. indicated that her first statement was given "off the top of [her] head memory," that she "told [the truth] to the best of [her] knowledge at the time," and that, as time passed, she began to remember more details about her pay structure.  [*See* R. 98 at 37, 53.]

In opposition, Mr. Tang argues that he paid J.M. a base wage of $2.13 during the entirety of her employment.  In support of his position, Mr. Tang provides check stubs given to J.M. between August and September 2015, which appear to indicate that she was paid between $7.25 and $8.25 an hour.  [*See* Def. Exh. 1.]  Additionally, Mr. Tang argues that J.M. lacks veracity and that her story has changed too frequently to be deemed credible.  [*See* R. 100 at 2.]  Upon review, Mr. Tang has failed to meet his burden of proof.  "Where the employer's records are inaccurate or inadequate ... an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient

3

evidence to show the amount and extent of that work […]." *United States DOL v. Cole Enters.*, 62 F.3d 775, 779 (6th Cir. 1995) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)).  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.*  Here, the reasonableness of the inference to be drawn from J.M.'s testimony is that she was not paid a base wage of $2.13 during either 2016 or 2017.  Despite her fluctuating testimony, the Court recognizes that, without having been given regular pay stubs, it cannot expect J.M. to know the details of her compensation scheme with exact accuracy.  Ultimately, the three pay stubs that Mr. Tang provides relate only to pay periods outside the scope of this dispute and are insufficient to overcome J.M.'s contention.  Consequently, the Court finds that J.M. was not paid a base wage of $2.13 an hour by Mr. Tang during 2016 or 2017.

**B**

Having determined J.M. to have not received a base wage, the Court must next examine whether J.M. is owed damages calculated with a base wage of $2.13 or $7.25.  In her initial interview with the Department of Labor, J.M. indicated that she worked for Mr. Tang for roughly eighteen months between 2016 and 2017.[1]  During that time, J.M. indicated that she had been paid a $2.13 per hour base wage during 2016, but that the base wage was not paid to her in 2017.  [R. 98 at 13-14.]  J.M. also indicated that she had not been properly compensated for her overtime work.  *Id.* at 13.  Because J.M. stated that she had been paid a base wage of $2.13 during 2016 and had kept her tips, Investigator Ritz calculated that J.M. was owed no additional

---

[1] Although J.M. also worked for Mr. Tang in 2015, the time in which she did not receive proper wages only includes the years 2016 and 2017.  [*See* Gov. Ex. A.]

4

back wages for 2016 and, instead, was only owed $754 in overtime.[2]  Because J.M. was not paid

a base wage during 2017, however, Investigator Ritz calculated that she was owed $2,871 in

back wages, for a combined total of $3,625 in owed wages.  [Gov. Exh. A.]  In her explanation

of her initial back wages calculation, Investigator Ritz indicated that she believed J.M. to be

owed $7.25 for each hour worked in 2017 because Mr. Tang did not pay her a base wage of

$2.13 per hour.  According to Investigator Ritz, "in cases like [J.M.'s] where the employee was

not paid a cash wage and they're only working for their tips, […] the tip credit is lost, and what

that means is that the employer then owes the employee the full minimum wage of $7.25 an hour

for all the hours that they worked."  [R. 98 at 16-17 (discussing 29 U.S.C. § 203(m)).]

Investigator Ritz recalculated J.M.'s owed wages prior to Mr. Tang's sentencing,

however, because J.M. provided a "Declaration of Victim Losses."  In her Declaration, J.M.

stated that she was never paid a base wage and, by her own calculation, was owed $16,380.

[Gov. Exh. F.]  Applying this new knowledge, Investigator Ritz calculated J.M. to be owed

$9,048 in back wages and $754 owed in overtime wages for 2016, alongside $2,871 owed in

back wages for 2017, for a total of $12,673.  Once more, this calculation was based on

Investigator Ritz's understanding that J.M. is due $7.25 per hour in back wages because she was

not paid a base wage of $2.13.  [Gov. Exh. B at 1-2.]

Mr. Tang disputes Investigator Ritz's understanding.  In his briefing, Mr. Tang contends

that, under 29 U.S.C. § 203(m)(2)(A), he is only required to pay J.M. $2.13 per hour in back

wages because she was allowed to keep her tips while employed at his restaurant.  [R. 100 at 1-

3.]  In support of Investigator Ritz's calculation, however, the Government argues that J.M. is

---

[2] This is because Investigator Ritz understood J.M. to have been paid a full $7.25 per hour
through the combination of her base wage and tips during 2016.

owed a full $7.25 per hour, regardless of whether she was permitted to keep her tips, because it reads the payment of a $2.13 base wage to be a statutory condition precedent that a party must comply with before being given the benefit of Section 203(m)'s "tip credit" scheme.  [R. 101 at 1-3.]  In further support, the Government cites a DOL Guidance that provides "[w]here an employee receives tips only and is paid no cash wage, the full minimum wage is owed."  [R. 101-1 at 3.]

> Upon review, the Court agrees with Mr. Tang.  Section 203(m)(2)(A) provides that
>
> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> > (i)   The cash wage paid such employee which for purposes of such determination shall not be less than the cash wage required to be paid such an employee on the date of the enactment of this paragraph […]; and
> >
> > (ii)  an additional amount on account of the tips received by such employee which amount is equal to the difference between the wages specified in clause (i) and the wage in effect under section 6(a)(1) [29 USCS § 206(a)(1)].
>
> […] The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee […].

29 U.S.C. 203(m)(2)(A).

Whether the statute mandates the payment of $2.13 an hour to a tipped employee as a condition precedent to its tip credit provision appears to be a novel issue in the Sixth Circuit. Nonetheless, persuasive case law is insightful.  In *Perez v. Ocean View Seafood Rest., Inc.*, the court concluded that, as long as a Defendant has "satisfied the two requirements of § 203(m): they informed their employees of their intent to use the tip credit and they allowed the tipped employees to retain all tips received," they were "eligible to avail themselves of the benefits of the tip credit provision of the FLSA."  217 F.Supp.3d 868, 876 (D.S.C. November 17, 2016).  In

reaching this conclusion, the court analyzed the text of Section 203(m) and found that the tip credit provision does not mandate, as a condition precedent to its application, payment of a $2.13 base wage, and that it would be inappropriate for the court to infer one. *Id.* ("'[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others[;]' that when Congress writes a statute, it 'says what it means and means … what it says there.'") (quoting *Conn Nat'l Bank v. Germain*, 502 U.S. 249, 253-54 (1992)); *see also Goldin v. Boce Group, L.C.*, 773 F. Supp. 2d 1376, 1379 (S.D. Fla. 2011) ("There is no 'condition precedent' that the reduced cash wage be paid for every hour worked before an employer is entitled to claim the statutorily-mandated tip credit.") (collecting cases).

The Court agrees with *Perez*. Section 203(m) only provides two prerequisites to its applicability: (1) an employer must inform their employees of their intent to use the tip credit and (2) allow the tipped employees to retain all tips received. 28 U.S.C. § 203(m)(2)(A); *see also Church v. Pine* Club, 2021 U.S. Dist. LEXIS 131666 at *3 (S.D. Oh. July 15, 2021) ("this tip credit is available only if the employer first informs the employee of the provisions of § 203(m)"). Consequently, as a matter of law, the Court holds that an employer is not required to pay a base wage of $2.13 an hour to his tipped employee to take advantage of Section 203(m)'s tip credit scheme, as long as the statute's two explicit prerequisites are satisfied. Here, Mr. Tang contends that "[t]here has been no factual dispute that the Defendant did not notify J.M. of his intent to use the credit and no dispute that the Defendant allowed J.M. to keep all of her tips." [R. 100 at 1-2.] The Government does not dispute Mr. Tang's contention, nor does the record indicate otherwise. Accordingly, Mr. Tang is entitled to the tip credit provision of Section 203(m) and is therefore only required to pay J.M. $2.13 per hour.

Having made this determination, the Court calculates Mr. Tang to owe J.M. $4,255.72 in unpaid back wages and overtime.  The Court's damages calculation is as follows:

**BACK WAGES**

| Year | Hours Worked Per Week | Weeks Worked Per Year | Wages Owed Per Hour | Total |
|------|------|------|------|------|
| 2016 | 48 | 26 | $2.13 | $2,658.24 |
| 2017 | 18 | 22 | $2.13 | $843.48 |
|  |  |  |  | $3,501.72 |

**OVERTIME**

| Year | Overtime Hours Worked Per Week | Weeks Worked Per Year | Wages Owed Per Hour | Total |
|------|------|------|------|------|
| 2016 | 8 | 26 | $3.625 (7.25 x 1.5) - $ 5.12 tip credit = $5.755 - $2.13 already paid. | $754 |

**TOTAL OWED = $4,255.72**

### C

J.M. is also owed liquidated damages.  29 U.S.C. § 216(b) indicates that "[a]ny employer who violates the [wage and hour provisions] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  Mr. Tang does not dispute that liquidated damages are likely owed in this matter.  [R. 100 at 5 ("The defense maintains the issue is not 'if' but 'how much.'").]  But surprisingly, the Government opposes an award of liquidated damages.  In explanation of its opposition, the Government states that it "did not consider § 216 liquidated damages" in its calculation of damages and that "[t]o the extent that no other victim has been awarded liquidated damages, the

United States objects to its imposition in order to maintain equity amongst the victims." [R. 101 at 6, n.1.]

Nonetheless, § 216 mandates an award of liquidated damages here, despite the Government's agreements with Mr. Tang's other victims.  § 216 states that an employer "shall be liable" for liquidated damages if he violates certain wage and hour laws.  29 U.S.C. § 216.  This mandate is only limited "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]."  29 U.S.C. § 260; *see also Perez v. Sophia's Kalamazoo, LLC*, 2015 U.S. Dist. LEXIS 154987 at *42-*44 (W.D. Mich. Nov. 17, 2015).  In this matter, there has been no argument that Mr. Tang acted in good faith.  Instead, Mr. Tang concedes that liquidated damages are appropriate, but only seeks to limit the amount awarded.  [*See* R. 100 at 5.]  Accordingly, J.M. is owed $4,255.72 in liquidated damages as "an additional equal amount" to her unpaid wages and overtime.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Government's Motion to Amend Judgment [R. 91] is **GRANTED**;

2. Mr. Tang **SHALL PAY** J.M. $4,255.72 in unpaid back wages and overtime, and $4,255.72 in liquidated damages, for a combined total of $8,511.44;

3. Payment shall occur within sixty days of the date of the entrance of this Order;

4. Mr. Tang's Motion for Leave to Seal Exhibit 1 [R. 102] is **GRANTED**;

5. The Government's Motion for Restitution Distribution [R. 104] is **GRANTED**.

This the 30th day of March, 2022.

Gregory F. Van Tatenhove
United States District Judge